899 So.2d 1176 (2005)
The STATE of Florida, Appellant,
v.
Kenneth CARPENTER, Appellee.
No. 3D04-1487.
District Court of Appeal of Florida, Third District.
April 13, 2005.
Charles J. Crist, Jr., Attorney General and Angel L. Fleming, Assistant Attorney General, for appellant.
Ronald S. Guralnick, Miami, for appellee.
Before COPE, GREEN, and WELLS, JJ.
*1177 PER CURIAM.
The State of Florida appeals an order dismissing its information against the defendant, Kenneth Carpenter. For the following reasons, we reverse.

Facts
The arrest affidavit shows that on Thursday, April 25, 2002, at approximately 6:25 a.m., the defendant, a police officer, called "911" and reported that the undercover police vehicle assigned to him by the City of Miami Police Department had just been stolen. He claimed that he had left the car running in front of his residence while he went inside, and when he returned, it was gone. He told the 911 operator that he saw the vehicle turn the corner and head toward the Perrine area. The defendant claimed that a handgun and shotgun were also left inside the vehicle.
At his residence, the defendant relayed these same facts to Officer David Cohen of the Miami-Dade Police Department. Officer Cohen filed an offense incident report. Later that same day, the defendant's undercover police vehicle was discovered on a paved road. The car had been totally burned. The vehicle was impounded, and later examined, by a Miami-Dade Fire Department Fire Investigator who opined that the vehicle had been burned in an intentional arson.
On Monday, April 29, Detective Chris Hodges of the Miami-Dade Police Department located a witness who was working in the area where the burnt vehicle was recovered. The witness claimed that she had seen a fire at that location at about 3:00 a.m. on April 25. Three other witnesses, who also worked in the immediate area, claimed that they had seen the vehicle abandoned and burned at 6:15 in the morning on April 25.
Detective Hodges contacted the defendant at his residence on April 29. Initially, the defendant gave the detective a typed statement that he had prepared for the City of Miami Police Department. The defendant also gave the detective a sworn, hand-written statement providing that the vehicle had been in his open garage, with the engine running, when it was removed by an unknown party.
About twenty (20) minutes after the detective left the defendant's residence, the defendant called him and asked him to return. When the detective returned, the defendant told him that he had provided false information on the first statement, and therefore wanted to change his statement. He then told the detective that the vehicle had not been parked in his garage, but rather had been in the driveway of his residence. The defendant claimed that he had lied because he wanted his homeowner's insurance to cover the loss of the vehicle. The defendant then gave the detective a second, sworn, hand-written statement regarding the incident.
The following day, the defendant paged Detective Hodges. When the detective returned the call, the defendant stated that he wanted to change his statement again.
Detective Hodges arrived at the defendant's home, wearing a recording device. During the ensuing conversation, the defendant claimed that he had lied when he had told the police that the vehicle had been stolen at 6:25 a.m. The defendant then gave the detective a printed copy of a typed statement, which the defendant had supposedly prepared for his employer, which provided that he had left the keys in the vehicle at 1:30 a.m. on Thursday, April 25, and discovered the vehicle missing at about 6:15 that same morning.
On May 28, 2002, the state filed an information against the defendant charging him with insurance fraud in violation of *1178 section 817.234(1);[1] tampering with physical evidence in violation of section 918.13(1)(a)[2] and official misconduct in violation of section 839.25,[3] Florida Statutes. Thereafter, the defendant moved for a Bill of Particulars. The state filed a scant response to the Bill of Particulars stating the date and the place of the crimes charged.
The defendant then filed a sworn motion to dismiss the insurance fraud count of the Information, and thereafter an amended sworn motion, based upon his affirmative defense of recantation. In support of his motion, the defendant admitted the following facts:
[O]n April 29, 2002, at approximately 8:00 a.m., Detective Christopher Hodges arrived at the Defendant's residence to obtain a statement from the Defendant. At that time the Defendant had told the Detective that the subject vehicle was stolen from his open garage.
The Detective left the Defendant's residence at approximately 9:45 a.m., and approximately twenty (20) minutes later, the Detective received a telephone call from the Defendant, requesting that the Detective return to his residence.
At approximately 9:45 a.m., upon the Detective's return to the Defendant's residence, the Defendant advised the Detective that he had provided false information during that earlier statement and that he wanted to change his statement. The Defendant advised that he had lied, explaining that the vehicle was not in the garage at the time it was stolen, but rather was in the driveway of the residence. The Detective inquired *1179 as to why he was changing his statement, and the Defendant replied that he did not want to lie. The Defendant further advised the Detective that he knew he was going to be held financially responsible by his employer for the loss, and he wanted the case to be written up as a burglary so that he could file an insurance claim with his homeowner's insurance company.
Prior to the court's ruling on the motion, the state amended its information with the same charges, but clarified the insurance fraud count to read:
KENNETH CARPENTER on or between April 25, 2002, UNTIL APRIL 30, 2002 in the County and State aforesaid, did unlawfully, willfully and feloniously and with the intent to injure, defraud or deceive an insurance company, to wit: STATE FARM INSURANCE, prepare or make a written or oral statement that was intended to be presented to an insurance company in connection with, or in support of a claim for payment or other benefit pursuant to an insurance policy knowing that such statement contained false, incomplete or misleading information concerning any fact or thing material to such claim, to wit: THAT HIS POLICE ISSUED VEHICLE WAS ALLEGEDLY STOLEN and/or THE LOCATION OF THE POLICE VEHICLE WHEN IT WAS ALLEGEDLY STOLEN and/or THE TIME THAT THE POLICE VEHICLE WAS ALLEGEDLY STOLEN, in violation of s. 817.234(1) Florida Statutes, contrary to the form of the Statute in such cases made and provided, and against the peace and dignity of the State of Florida.
The charges in Counts 2 and 3 remained the same as in the initial information. The defendant, thereafter, filed a sworn motion to dismiss Count 1 of the Amended Information raising the same grounds as in its previous motion. The trial court granted the motion and dismissed the insurance fraud charge.
The State then filed a second Amended Information, charging the defendant with: Count 1  False Report of Commission of a Crime in violation of section 817.49;[4] Count 2 and Count 3  Fabricating Physical Evidence in violation of section 918.13(1)(b);[5] and Count 4  Official Misconduct in violation of Florida Statute 839.25.
Specifically, Count 1 of the second amended information charged that the defendant "did willfully impart, convey, or cause to be conveyed to a law enforcement officer, . . . false information and/or reports concerning the alleged commission of a crime ... to wit: A BURGLARY and/or a THEFT, knowing such information or report to be false, in that no such crime had actually been committed. . . ."
*1180 Counts 2 and 3 charged that the defendant "unlawfully and feloniously," knowing that a criminal trial, proceeding, or investigation, was pending made or presented a false record or document. Count 2 was specifically charged for:
A TYPEWRITTEN ONE-PAGE LETTER DATED APRIL 30, 2002; AND/OR A HANDWRITTEN TWO-PAGE METRO-DADE POLICE DEPARTMENT STATEMENT FORM DATED APRIL 30, 2002.
Count 3 was specifically charged for:
A TYPEWRITTEN TWO-PAGE LETTER DATED APRIL 29, 2002 AND/OR A HANDWRITTEN ONE-PAGE METRO-DADE POLICE DEPARTMENT STATEMENT FORM DATED APRIL 29, 2002 WITH A TIME "APPROXIMATELY" 8:00 AM AND/OR A HANDWRITTEN ONE-PAGE METRO-DADE [SIC] POLICE DEPARTMENT STATEMENT FORM DATED APRIL 29, 2002 WITH A TIME OF 10:00 AM[.]
Finally, Count 4 charged that the defendant, a public servant, on or between April 25, 2002, and April 30, 2002, knowingly falsified or caused another to falsify an official record, the "METRO-DADE POLICE DEPARTMENT STATEMENT FORMS DATED APRIL 29, 2002 and APRIL 30, 2002 and/or A MIAMI-DADE POLICE OFFENSE INCIDENT REPORT DATED APRIL 25, 2002," with the intent to obtain a benefit to himself or cause harm to another.
The defendant filed a demand for a statement of particulars pursuant to Florida Rule of Criminal Procedure 3.140(n).[6] The demand claimed that, as to Count 1, there was no information regarding the nature of the false information given to Officer Cohen or Detective Hodges. As to Counts 2, 3, and 4, the defendant claimed that the second amended information failed to describe the nature of the falsehoods contained in the designated records. The defendant averred that due to this "lack of information" he was hindered in the preparation of his defense. The trial court granted the demand and ordered the state to provide, with specificity, the nature of the false information that the defendant allegedly furnished to law enforcement.
The state filed its Statement of Particulars on March 23, 2003, which provided:
1) As to Count I, the defendant, on or about April 25, 2002, did willfully impart, convey, or cause to be conveyed to a law enforcement officer, to wit: Officer David Cohen and/or Detective Christopher Hodges, false information and/or reports concerning the alleged commission of a burglary of the defendant's residence, and/or the theft of a vehicle from the defendant's residence and/or from the curtilage of the defendant's residence on April 25, 2002.
2) As to Count II, the falsehoods which were presented on or about April 30, 2002 as alleged in the typewritten one-page letter dated April 30, 2002, and/or the handwritten two-page Metro-Dade *1181 Police Department statement form dated April 30, 2002 are: the circumstances regarding the defendant's actions immediately prior to the alleged theft of the vehicle, and/or the circumstances regarding the alleged theft of the vehicle, and/or the circumstances regarding the defendant's actions upon allegedly noticing the vehicle was stolen for the first time, and/or the circumstances regarding the defendant's actions and/or observations immediately after the alleged theft of the vehicle on April 25, 2002.
3) As to Count III, the falsehoods which were presented on April 29, 2002 as alleged in the typewritten two-page letter dated April 29, 2002 and/or a handwritten one-page Metro-Dade Police Department statement form dated April 29, 2002 with a time "approximately" 8:00 AM and/or a handwritten one-page Metro-Dade Police Department Statement Form dated April 29, 2002 with a time of 10:00 AM are: the circumstances regarding the defendant's actions immediately prior to the alleged theft of the vehicle, and/or the circumstances regarding the alleged theft of the vehicle, and/or the circumstances regarding the defendant's actions and/or observations immediately after the alleged theft of the vehicle, and/or the location of the vehicle at the time of the alleged theft, and/or whether the car was running, and/or that the defendant left while the car was running and/or that the defendant left the car to turn off the coffee-maker, and/or that any or all of the above occurred at approximately 6:30 AM. on April 25, 2002.
4) As to Court IV, the Miami-Dade Police Offense Incident Report Dated April 25, 2002 and/or the Metro-Dade Police Department Statement Forms dated April 29, 2002 and/or the Metro-Dade Police Department Statement Forms dated April 30, 2002 were false regarding the circumstances prior to, and/or during, and/or after an alleged theft of a vehicle at the defendant's residence on April 25, 2002.
Still claiming to be prejudiced by the vagueness of the state's response, the defendant filed a renewed demand for statement of particulars specifically asking the state to "[p]lease tell us what precise statements/words of the Defendant, either verbal or written, were lies?" At a hearing on the demand for a statement of particulars, the trial court found that the state's initial statement was ambiguous, and that it did not comply with the court's previous order. The state was given the option of preparing a "proper" Statement of Particulars or face dismissal of the charges. The following then occurred:
THE COURT: [Y]ou have two choices: You can go back and prepare a proper Statement of Particulars. I'm giving the State the opportunity to do that. If the State does not wish the opportunity to comply, then I can simply dismiss the charges right now. It's up to the State.
THE STATE: Again, Your Honor, we have complied with your Court's order. We are still awaiting for the defendant to state how they are prejudiced.
THE COURT: [W]e are not communicating. We have two things going on. You either  do you want a chance to revise your Statement of Particulars and comply with the Court's order, or should I dismiss the case right now?
One or the other, please, answer.
THE STATE: Judge, we have filed a Statement of Particulars....
I'm not asking you to dismiss the case, I am telling you that the 
THE COURT: Are you going to go and revise the Statement of Particulars?

*1182 THE STATE: We believe that the Statement of Particulars is sufficient to apprise the defendant.
THE COURT: Is that a no? Is that a no?
THE STATE: No as to what?
THE COURT: As to going back and revising and editing the Statement of Particulars so that it will be in compliance with the Court's order?
THE STATE: We believe we have complied with the Court's order.
THE COURT: Are you telling me you are not going to revise it any further, yes or no?
THE STATE: No, Judge.
THE COURT: No, fine. It's defective. I'm going to dismiss the charges.
The State has appealed the dismissal.

Analysis
The authority to impose sanctions for failure to comply with a discovery rule or court order is set out in Florida Rule of Criminal Procedure 3.220(n), which provides in pertinent part:
(1) If, at any time during the course of the proceedings, it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or with an order issued pursuant to an applicable discovery rule, the court may order the party to comply with the discovery or inspection of materials not previously disclosed or produced, grant a continuance, grant a mistrial, prohibit the party from calling a witness not disclosed or introducing in evidence the material not disclosed, or enter such other order as it deems just under the circumstances.
(2) Willful violation by counsel or a party not represented by counsel of an applicable discovery rule, or an order issued pursuant thereto, shall subject counsel or the unrepresented party to appropriate sanctions by the court. The sanctions may include, but are not limited to, contempt proceedings against the attorney or unrepresented party, as well as the assessment of costs incurred by the opposing party, when appropriate.
"Although the choice of sanction is within the discretion of the trial court, . . . the appellate court may determine whether this discretion has been abused[.]" State v. Del Gaudio, 445 So.2d 605, 607-08 (Fla. 3d DCA 1984) (citations omitted) (footnote omitted).
Dismissal of an information is, however, an extreme sanction that should be used with caution, and only when a lesser sanction would not achieve the desired result. State v. Thomas, 622 So.2d 174, 175 (Fla. 5th DCA 1993). See also Del Gaudio, 445 So.2d at 608 ("Dismissal of an information or indictment is `an action of such magnitude that resort to such a sanction should only be had when no viable alternative exists'") (quoting State v. Lowe, 398 So.2d 962, 963 (Fla. 4th DCA 1981)). Before a court can dismiss an information for a prosecutor's violation of a discovery rule or order, the trial court must find that the prosecutor's violation resulted in prejudice to the defendant.[7]Thomas, 622 So.2d at 175; Richardson v. State, 246 So.2d 771 (Fla.1971).
The obvious rationale for limiting the sanction of dismissal of criminal charges to only those cases where no other sanction can remedy the prejudice to the defendant is to insure that the public's interest in having persons accused of crimes brought to trial is not sacrificed in the name of punishing a prosecutor's *1183 misconduct. And, of course, where the prosecutor's failure to make discovery has not irreparably prejudiced the defendant, the sanction of dismissal punishes the public, not the prosecutor, and results in a windfall to the defendant.... [T]he rule authorizing the imposition of sanctions for discovery violation was `never intended to furnish a defendant with a procedural device to escape justice[.]'
Del Gaudio, 445 So.2d at 608 (quoting Richardson, 246 So.2d at 774).
The order of dismissal in this case contains no finding of prejudice to the defendant nor does our review of the record support such a finding. In fact, the order of dismissal here specifically provides that dismissal was granted because the state represented that it would not comply with the Court's order.[8] This is an inadequate ground for a dismissal that, in effect, "punishes the public, not the prosecutor, and results in a windfall to the defendant." Thomas, 622 So.2d at 175.
Given the facts and pleadings in this case, we find that the trial court abused its discretion when it imposed the sanction of dismissal. The arrest report indicates that the defendant changed his story on April 29 and 30, as to the whereabouts of the vehicle when it was allegedly stolen, and the time in which the vehicle was allegedly taken. The defendant's own sworn pleadings admit that he initially lied to Detective Hodges about the circumstances surrounding the vehicle being taken from his garage. In view of these details, if these are the statements upon which the information is based, there is no prejudice to defendant sufficient to justify the severe sanction of dismissal.
However, if the State intends to prosecute the defendant on grounds other than those set out above, then the State must do so with particularity. We are not unmindful of the court's frustration with the prosecutor's defiance in the face of the court's order. We remind the court that it has other alternative sanctions, in lieu of dismissal, available to address the prosecutor's response, or lack thereof, other than dismissal to enforce compliance with its order.
Accordingly, we reverse the order of dismissal and remand for further proceedings.
NOTES
[1] Section 817.234 provides:

(1)(a) A person who, with the intent to injure, defraud, or deceive any insurer:
1. Presents or causes to be presented any written or oral statement as part of, or in support of, a claim for payment or other benefit pursuant to an insurance policy, knowing that such statement contains any false, incomplete, or misleading information concerning any fact or thing material to such claim;
2. Prepares or makes any written or oral statement that is intended to be presented to any insurer in connection with, or in support of, any claim for payment or other benefit pursuant to an insurance policy, knowing that such statement contains any false, incomplete, or misleading information concerning any fact or thing material to such claim; or
3. Knowingly presents, causes to be presented, or prepares or makes with knowledge or belief that it will be presented to any insurer, purported insurer, servicing corporation, insurance broker, or insurance agent, or any employee or agent thereof, any false, incomplete, or misleading information or written or oral statement as part of, or in support of, an application for the issuance of, or the rating of, any insurance policy, or who conceals information concerning any fact material to such application commits a felony of the third degree, punishable as provided in Sec. 775.082, Sec. 775.083, or Sec. 775.084.
[2] Section 918.13 provides:

(1) No person, knowing that a criminal trial or proceeding or an investigation by a duly constituted prosecuting authority, law enforcement agency, grand jury or legislative committee of this state is pending or is about to be instituted, shall:
(a) Alter, destroy, conceal, or remove any record, document, or thing with the purpose to impair its verity or availability in such proceeding or investigation[.]
[3] Section 839.25 provides:

(1) "Official misconduct" means the commission of the following act by a public servant, with corrupt intent to obtain a benefit for himself or another or to cause unlawful harm to another: knowingly falsifying, or causing another to falsify, any official record or official document
(2) "Corrupt" means done with knowledge that act is wrongful and with improper motives.
(3) Official misconduct under this section is a felony of the third degree, punishable as provided in Sec. 775.082, Sec. 775.083, or Sec. 775.084.
[4] This statute provides:

Whoever willfully imparts, conveys or causes to be imparted or conveyed to any law enforcement officer false information or reports concerning the alleged commission of any crime under the laws of this state, knowing such information or report to be false, in that no such crime had actually been committed, shall upon conviction thereof be guilty of a misdemeanor of the first degree, punishable as provided in Sec. 775.082 or Sec. 775.083.
[5] This statute provides in pertinent part that:

(1) No person, knowing that a criminal trial or proceeding or an investigation by a duly constituted prosecuting authority, law enforcement agency, grand jury or legislative committee of this state is pending or is about to be instituted, shall:
* * *
(b) Make, present, or use any record, document, or thing, knowing it to be false.
[6] This rule provides:

(n) Statement of Particulars. The court, on motion, shall order the prosecuting attorney to furnish a statement of particulars when the indictment or information on which the defendant is to be tried fails to inform the defendant of the particulars of the offense sufficiently to enable the defendant to prepare a defense. The statement of particulars shall specify as definitely as possible the place, date, and all other material facts of the crime charged that are specifically requested and are known to the prosecuting attorney, including the names of persons intended to be defrauded. Reasonable doubts concerning the construction of this rule shall be resolved in favor of the defendant.
[7] "Prejudice means something which affects the ability of the defendant to properly prepare for trial." State v. Thomas, 622 So.2d at 175.
[8] The order provided:

Based upon the State's representations that it would not comply with the Court's order the Court determined that it would be futile to enter any additional orders regarding the Statement of Particulars.